FORSTMANN WOOLEN CO. v. J. W. MAYS, Inc.

Civ. No. 7440.

United States District Court E. D. New York.

April 24, 1950.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for plaintiff.

Joseph P. Segal, New York City, of counsel.

Conrad and Smith, New York City, for defendant, Samuel Rubin, New York City, of counsel.

GALSTON, District Judge.

The plaintiff is a corporation organized under the laws of the State of New Jersey, and manufactures and sells in interstate commerce woolen and worsted fabrics of superior quality. These fabrics are sold in piece goods and under the name "Forstmann" and "Forstmann Woolens".

The plaintiff registered the name "Forstmann Woolens" as a trade-mark in the United States Patent Office, and it is likewise the owner of other trade-mark and copyright registrations which it alleges have been infringed by the defendant. Included in the single count of the complaint, the plaintiff also accuses the defendant of unfair competition.

The defendant is a corporation organized under the laws of the State of New York, and conducts a limited "self-serving" type of department store in the Borough of Brooklyn for the sale at retail of ready-to-wear ladies' coats, suits, dresses and other wearing apparel.

The plaintiff has expended large sums of money annually for advertisements featuring the plaintiff's name, trade-marks and labels, and has created a large demand for plaintiff's fabrics and for garments made therefrom, with the plaintiff's label affixed

thereto, and has built up and acquired a valuable reputation and good-will.

The proof discloses that the plaintiff's fabrics are of high grade and are recognized as such in the trade. They are sold to manufacturers of ladies' coats, suits, dresses, skirts, jackets and other garments. These manufacturers, so the plaintiff's witness Robinson testified, are known for their integrity and reputation, and for style and superior standard of workmanship. Their garments are sold to the better class department stores and specialty shops in New York City and other cities in the United States. Many of these stores advertise the sale of such garments featuring plaintiff's name, trade-mark and label as an invaluable help in the sale of the garment.

With its sales to its customers, plaintiff furnishes without charge the labels bearing its name and trade-marks "upon condition that such labels be used with and affixed only to the garments which are made up of the fabric purchased directly from the plaintiff" and "which garments are sold by such customers with the label affixed thereto; otherwise said labels remain the property of the plaintiff and return to the plaintiff".

Before trial the plaintiff moved for a preliminary injunction and for summary judgment. The motion for summary judgment was denied, but relief pendente lite was granted enjoining the defendant from advertising in connection with the sale of coats and suits of Forstmann fabrics the expressions "Forstmann Wool Suits", "Forstmann's Virgin-Wool Melton Winter Coats", "Forstmann's Virgin-Wool Coats", 'Forstmann's Wool Coats", and other similar words or phrases which purported to inform the public "that such garments were manufactured by the plaintiff; and from printing the name 'Forstmann' in type so large as to overshadow the remaining part of any such advertisement". See Forstmann Woolen Co. v. J. W. Mays, Inc., D.C., 71 F.Supp. 459.

In the course of the trial plaintiff particularized the relief which it now seeks. It may be summarized as follows:

1. (a) The use and reproduction of plaintiff's label in defendant's advertisement for the sale of garments made of Forstmann fabric.

(b) The sale of ladies' suits with the name "Forstmann" thereon, and the Forstmann label annexed thereto when purchased from a manufacturer who did not receive the labels from Forstmann and was not authorized by it to use the same.

(c) To restrain the use of the name "Forstmann" and its label upon coats made of Forstmann cloth not manufactured or sold in the general market but upon special specifications for Army or Navy use without the furnishing of any labels, or the use thereof in connection with the garments made therefrom.

2. The use of the name "Forstmann" in advertisements featuring the name and mark as a selling device in large and attractive type and in the manner which constitutes a trade-mark use of the name "Forstmann" as distinguished from the use thereof descriptively of the garments.

It must be emphasized at the outset that the plaintiff makes no contention that the defendant offered for sale spurious woolens under the name "Forstmann". It is an important consideration. All of the products which the defendant advertised under the name "Forstmann", or sold under that name, were made of genuine Forstmann woolens.

Some of the garments advertised and sold by the defendant, of which the plaintiff complains, were purchased from the Campus Coat Corporation. That company had purchased eighty or ninety pieces of Forstmann woolen goods from a jobber, Goldenbrook Worsted Corp. The Campus company then manufactured from those Forstmann woolens ladies' coats which it sold to hundreds of retailers throughout the country. Some of these were sold to the defendant. The plaintiff sought to show that the Forstmann cloth involved in this manufacture by the Campus Coat Corporation was originally manufactured for the United States Government, and that the Government, after cessation of war hostilities, resold the cloth as surplus goods.

It was admitted by plaintiff's witness Robinson, an executive of the plaintiff, that the sale of those goods to the United States Government was not attended with any restriction which forbade the Government reselling the cloth. This absence of restriction applied generally, so that the Government, according to Mr. Robinson, was free to sell the cloth to manufacturers of ladies' apparel. There is no proof that the Goldenbrook Worsted Corporation, which purchased from the Government, knew of any restriction, and in the chain of events there is no proof that the Campus Coat Corporation knew of any restriction; so too it must be concluded that the purchasers of the garments from Campus, which include the defendant, knew of no restrictions which prevented them from offering the Campus garments, made of genuine Forstmann cloth, for sale to their customers.

The plaintiff has sought to show that the terms of the preliminary injunction have been violated, and points first to the advertisement of the defendant in the issue of the Brooklyn Eagle of April 22, 1949. In that advertisement, though the recital makes no false representation to the public, the name "Forstmann's" is given prominence. The legend reads:

Suits! Toppers
of Forstmann's
100% Woolens

The toppers were actually of Forstmann's 100% woolens. That is a true statement. Such a representation of the truth is not condemned in Prestonettes, Inc., v. Coty, 264 U.S. 359, 44 S.Ct. 350, 351, 68 L.Ed. 731.

In the Prestonettes case the question involved was whether there was an infringement of plaintiff's trade-marks "Coty" and "L'Origan". The issue of unfair competition was not involved. Defendant purchased the genuine powder, and after adding a binder, sold the product as compacts. The District Court found that the defendant, as the owner of such genuine powder, had a right to compound or change what it bought, and to sell it as thus divided. The decision of the Supreme Court contains this passage: "If the name Coty were allowed to be printed in different letters from the rest of the inscription * * a casual purchaser might look no further and might be deceived. But when it in no way stands out from the statements of facts that unquestionably the defendant has a right to communicate in some form, we see no reason why it should not be used collaterally, not to indicate the goods, but to say that the trade-marked product is a constituent in the article now offered as new and changed. As a general proposition there can be no doubt that the word might be so used."

Thus it was decided by the Supreme Court that there was no infringement of the trade-mark. See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386, to the same effect. So likewise in the present action it must be held that there is no infringement of a technical trade-mark.

■ There is this distinction between the Prestonettes case and the case at bar. In the former action, although defendant's products were "new and changed", they were still face powder and perfume. Here, however, plaintiff manufactures woolen fabrics, while defendant seeks to market ladies' suits and coats. Defendant contends that since it has abandoned the use of such expressions as "Forstmann's Wool Coats" and now advertises "Toppers of Forstmann's Duvana Suedes", its advertisements are not likely to mislead the public into believing that plaintiff manufactures the garments. Therefore, defendant argues, it does not infringe within the meaning of the Prestonettes case. Nevertheless the issue of unfair competition rests on an entirely different basis.

In disregard of the terms of the preliminary injunction of May 23, 1947, the defendant has caused certain advertisements to be published which are calculated to mislead the public. Take, for example, part of Exhibit 30, an issue of the New York Post Home News of September 28, 1949. There appears the glaring top line in heavy type: "Forstmann's Virgin-Wool-

ens"; and immediately below, and also in heavy type:

"100% Virgin-Wool Suits
& Fur Trim Coats of
World-famous Forstmann Woolens"

As compared with those misleading headlines, we have on the left hand side of the page, and also in the middle column, the use of "Forstmann" in smaller and unobjectionable type.

Plaintiff's claim of unfair competition, aside from its contention that its technical trade-marks are infringed, is based not only on offending advertisements, but also on the ground that the apparel sold and advertised for sale by the defendant is "of inferior workmanship and standard of workmanship than the garments manufactured by plaintiff's customers from plaintiff's fabrics * * * and defendant is selling the garments at lower prices than those sold by plaintiff's customers"; and on the further ground that attached to some of the garments sold are manufacturer's tags bearing the legend "Mfr. by Forstmann Woolen Co."

Proof that the garments sold and offered for sale by the defendant are of inferior workmanship was offered by Robinson and supplemented by the testimony of a Mr. Zelinka, a manufacturer of women's coats, suits and dresses, and Mr. Rosenberg, a buyer of women's apparel.

Exhibit 32 is a coat, part of a lady's suit, which the plaintiff regards as being of the quality of style, design and workmanship generally associated with Forstmann's woolens. Robinson testified that "it is beautifully tailored, beautiful details, one that expresses the true character of the cloth and represents fine quality in every respect". Robinson also examined a lady's suit, advertised for sale by the defendant in an advertisement appearing in the New York Daily News of October 24, 1946. He stated that the lining was of poor quality and the binding on the skirt was of an incorrect color, as was the lining of the coat. He declared that "the whole get-up of the suit was of a character which would not be recognized as a quality garment by anyone * * * even the lay-

man consumer". He expressed a similar opinion of a coat advertised for sale by the defendant in the New York Daily News of November 28, 1946.

Robinson's testimony as to the inferior quality of these garments was corroborated in every detail by the witnesses Rosenberg and Zelinka.

From the foregoing, must it be concluded then that the defendant has engaged in unfair competition?

In this circuit, in a case decided recently, Triangle Publications, Inc. v. Rohrlich, 2 Cir., 167 F.2d 969, 972, the plaintiff published under the registered trade-mark "Seventeen" a magazine of fashions and other interests for teen age girls. The defendant manufactured girdles under the name "Miss Seventeen". The court held that the evidence supported the District Court's finding that the word "Seventeen" as used by plaintiff had acquired a secondary meaning, and that its use by defendant was likely to cause a confusion as to sponsorship by plaintiff that might be harmful to its reputation.

In the course of the opinion, Judge Augustus Hand referred to the case in the Eighth Circuit, Hanson v. Triangle Publications, 163 F.2d 74, in which an injunction was granted to the same plaintiff, and found the ground to be "that the defendants' use of 'Seventeen' created a likelihood that the public would erroneously believe that defendants' dresses were advertised in or sponsored by the magazine and that the plaintiff's reputation and good will would thereby be injured". The Supreme Court denied certiorari in this case, 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424.

Do the defendant's acts fall within the frame-work of this condemnation? If one accepts the testimony in respect to inferior workmanship on Forstmann's woolens as disclosed in garments sold or offered for sale by the defendant, there is the possibility created that the plaintiff's reputation might be injured. What the plaintiff, therefore, seeks in sum is an injunction which would prevent the defendant from selling or offering to sell garments of inferior workmanship. I do

not think that the Triangle Publication cases carry the doctrine to that limit. Nor does Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, carry the doctrine of unfair competition to the limit sought to be implied by the plaintiff in this case, for the facts were quite different. That was an action in which it appeared that the use of the word "Vogue" as a label on hats, and the letter "V" in such a relatively large size as to dominate the context, was held to be in unfair competition with the publisher of a magazine known as "Vogue"; also a large sized capital "V" was used as a trade-mark, carrying beneath its sides the figure of a woman. In that case the court found objectionable both the use of the term "Vogue" as applied to women's hats, and also the letter "V". It was held to be in unfair competition with the plaintiff's marks. The hats manufactured by the defendant were put on sale by retailers throughout the country, and Judge Dennison observed: "There is no reason to doubt that this course of conduct by the defendant manufacturer and its retailers created a very common alternative impression—first, that these hats were manufactured by the plaintiff; or, second, that, although some knew that plaintiff was not manufacturing, yet these hats were in some way vouched for or sponsored or approved by the plaintiff." 300 F. 509, at page 511, certiorari denied 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850.

Nor in the light of a present trend, which frowns upon the extension of monopolies, even lawful monopolies, should the plaintiff's right be thus extended.

On the other hand, the public is entitled to be protected against any misrepresentation or over-emphasis which leads to misunderstanding. It was for that reason that the preliminary injunction was granted as to manner and content of defendant's advertisements.

If, as seems likely, the New York law of unfair competition is to determine the issue of unfair competition presented in this action, the result is the same, and the plaintiff must prevail, see Fisher v. Star Co., 231 N.Y. 414, 132 N.E. 133, 19 A.L.R. 937; and Tiffany & Co. v. Tiffany Pro-

ductions, 147 Misc. 679, 264 N.Y.S. 459, affirmed 237 App.Div. 801, 260 N.Y.S. 821, and 262 N.Y. 482, 188 N.E. 30.

The admonition given by Justice Holmes in the Prestonettes v. Coty case is a sound principle to follow here. Let there be no over-emphasis of the term "Forstmann". Such over-emphasis appears in the advertisements heretofore referred to as Exhibits 1, 2 and 3, as well as in Exhibits 4 and 30. Even though such use is not an invasion of a technical trade-mark, there is a deliberate attempt by the defendant to avail itself of the good-will which has been established by the plaintiff and the higher grade establishments which offer for sale garments manufactured of Forstmann fabrics. I refer particularly to the advertisement of Bonwit Teller, attached to the affidavit of Gilbert H. Robinson, which advertisement appeared in "Town and Country" in the issue of February 1945; also to that of de Pinna, in the issue of "Town and Country" of February 1946; and that of J. P. Allen of Atlanta, in "Town and Country" of February 1945; again that of Bonwit Teller in the issue of the New York Herald Tribune of March 31, 1946; of Mutual Rosenbloom Co. in Harper's Bazaar, of September 1946; of Stewart's of Louisville, Kentucky, in the issue of Vogue of March 1946; of B. Altman & Co. in the issue of the New York Herald Tribune of March 10, 1946; and of Franklin Simon in the New York Sun of February 26, 1946. The only exceptions in the class of well known high grade stores in the metropolitan area are those of Best & Co. and I. J. Fox, but neither one of these two is as pronounced and emphatic as the use by the defendant in its exhibits. Cross-examination of Mr. Robinson in respect to these two exhibits, introduced by the defendant, ran as follows:

"Q. Well, did you see an advertisement on October 21, 1949 of I. J. Fox? I now hand you the advertisement. A. This is the first that I have seen it, to my knowledge.

"Q. Would you say that is not consistent with the customary method of advertising the Forstmann product, or prod-

ucts made with Forstmann woolens? A. I would say this is definitely an exception rather than the rule. The emphasis given is much greater than I have ever seen I. J. Fox ever give any in any of their advertising.

"Q. You do not question that is an advertisement of I. J. Fox? A. No.

"Q. Would you say, Mr. Robinson, that Best & Company is one of the typical high-class stores in New York City? A. Yes.

"Q. That is almost on a par with those that you have mentioned, such as Lord & Taylor, Bergdorf-Goodman and Saks Fifth Avenue? A. It is a qualified quality store.

"Q. And is Charmona one of your trade-marks? A. Yes, sir.

"Q. Will you look at this advertisement of Best & Company and tell me whether in your opinion that is typical of the advertisements of the high-class Fifth Avenue stores? A. This is not typical, no.

"Q. That is also an exception? A. Yes, I would say that is definitely an exception.

Attention must be directed to the modest type used by these well known high grade stores in the use of plaintiff's name. It is never over-emphasized. If the defendant desires to pursue a similar method, it may. Apparently it was not content with adopting that practice, and what it has done since the entry of the order granting the preliminary injunction is a clear violation of that injunction.

There remains for consideration the challenged use of plaintiff's copyright registrations; certificates Nos. 41,759, 41,760, 42,025 and 42,111. All of these certificates relate to a drawing which the plaintiff has reproduced in the form of what may properly be termed a label containing the words "Forstmann's 100% Virgin Wool", and interwoven with three separate fleurs de lis. The alleging infringing label, which appears on plaintiff's Exhibit 31, contains the legend:

This is
Forstmann's
100% Virgin Wool

The fleurs de lis do not appear on the label.

This is certainly not an infringement of any one of the plaintiff's copyrights.

Moreover, it is not contested that the garment is not made out of Forstmann's 100% virgin wool.

However, in respect to plaintiff's Exhibits 11 and 12, the copyright label is attached. These exhibits, ladies' coats, were purchased from the Campus Coat Co. by the defendant. Shulman, vice president and general manager of defendant, said when these coats were purchased from the Campus Coat Co. the only markings with the garments were the tags attached to the garments by the manufacturer; by that he meant the paper tag bearing the legend: "Mfr. by Forstmann Woolen Co.". Schulman also testified that the garment was not manufactured by the Forstmann Woolen Co. He was then asked:

"Q. There is also attached to the garment a label reading 'Forstmann's 100% Virgin Wool' on the sleeve. Was that on the garment at the time you received it? A. It was not."

Exhibit 10 is a garment purchased from the defendant by Miss Whiteside, an employee of the plaintiff. Shulman testified, when questioned with respect to the label which appears on the sleeve (which is a reproduction of the Forstmann copyright registration):

"Q. So far as you know, Mr. Shulman, has the defendant at any time received any labels of Forstmann's, Forstmann's woolens, other than those attached to the garments purchased? A. We have not received labels.

"Q. Have you ever attached labels yourselves to any garments that you purchased from manufacturers? A. Not of Forstmann's. I qualify that because sometimes other manufacturers will send in labels to be attached by us."

Later on the witness was asked:

"Q. But directing your attention to Forstmann's, have you ever had in your possession at any time any garments containing Forstmann's labels except those that you found attached to the garments when you purchased them? A. No."

Nevertheless Exhibits 11 and 12 do bear such labels. Some one put them there. I am forced to conclude that they were on the garments when Miss Whiteside and Pfeifer purchased them. Such a use of the registration label was a violation of the copyright registration, if the copyright registration was valid. There is some question about such validity. As early as the case of Higgins v. Keuffel, 140 U.S. 428, 11 S.Ct. 731, 35 L.Ed. 470, the question was considered whether the constitutional clause authorizing copyrights extended to labels which were intended solely to designate the articles upon which they were placed.

■ The 8th section of Article 1 of the Constitution provides: "the Congress shall have Power To * * * promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

As is, of course, well known, the provision, as Mr. Justice Field observed, has reference only to such writings and discoveries as are the result of intellectual labor, see In re Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550. Mr. Justice Field said, referring to the Constitutional clause: "It does not have any reference to labels which simply designate or describe the articles to which they are attached and which have no value separated from the articles and no possible influence upon science or the useful arts. A label on a box of fruit giving its name as 'grapes', even with the addition of adjectives characterizing their quality * * * does not come within the object of the clause."

However, since Higgins v. Keuffel, the Copyright Act has been amended so as to include "§ 5, subdivision (K), prints and pictorial illustrations including prints or labels used for articles of merchandise" by the amendment of 1939 to the copyright statute, Act of July 31, 1939, c. 396, 53 Stat. 1142, 17 U.S.C.A. § 5(K).

Thereafter, in Griesedieck Western Brewery Co. v. People's Brewing Co., D.C., 1944, 56 F.Supp. 600, affirmed 149 F.2d 1019, Judge Joyce, in a careful review of the applicable law, concluded that that part of the copyright label which contains the words "Stag Beer" in large letters, and "Extra Dry Pilsener" in smaller letters were not of such originality or contribution to the "fine arts" as to entitle them to protection under the copyright law. He found that the only part of plaintiff's label that was subject to copyright protection is the picture of the animal's head.

■ Applying that analysis to the facts of our case, there certainly is nothing artistic about the way in which the plaintiff's name, nor the legend "100% Virgin Wool", appears on the copyright label. That leaves the representation of the fleurs de lis. Surely and certainly in the form in which the fleurs de lis are shown, no originality is displayed. As Judge Frank observed in considering a certificate of copyright, in Chamberlin v. Uris Sales Corporation, 2 Cir., 150 F.2d 512, at page 513: "Obviously the Constitution does not authorize such a monopoly grant to one whose product lacks all creative originality."

I must conclude, therefore, that there is no infringement of the copyright registrations, because those registrations are not valid under the copyright statute.

■ Nevertheless, to the extent that the defendant's advertisements give prominence to the label, even though that label is not the subject of valid copyright registration, yet its prominence in some of the defendant's advertisements, as for example in plaintiff's Exhibit 3, is an element of unfair competition such as should be condemned.

■ The defendant must also desist from selling to any of its customers garments to which are attached a tag bearing the words "Mfr. by Forstmann Woolen Co.", for that is a deliberate misrepresentation of the fact. Nor will any substantial equivalent of such legend be permitted.

The plaintiff may have a decree in conformity with the foregoing opinion which

972

would restrict the defendant from all advertisements concerning sales of products made of Forstmann's woolens which give prominent position and emphasis to such name or label, and from attaching tags or labels bearing any combination of words which would lead the customer to believe that the garments were manufactured by the plaintiff.

■ There will be no accounting of profits, since it does not appear that the damage to the plaintiff, if any, is measureable. See Champion Spark Plug Co. v. Sanders, supra, and Triangle Publications, Inc. v. Rohrlich, supra.

Appropriate findings of fact and conclusions of law will also be filed.