**TANNING RESEARCH LABORATORIES, INC. and H.T. Marketing, Inc., Plaintiffs,**

v.

**WORLDWIDE IMPORT & EXPORT CORP., Joseph Calcagno and Thomas Scotti, and various John Does, Jane Does and XYZ Companies (Unidentified), Defendant.**

No. 92 C 755.

United States District Court,
E.D. New York.

Oct. 6, 1992.

Brownstein Zeidman and Schomer, Washington, D.C. (Donald A. Kaul and Peter J. Klarfeld, of counsel), Cowan, Liebowitz & Latman, P.C., New York City, (J. Christopher Jensen and Joshua Paul, of counsel), for plaintiffs.

Gibney, Anthony & Flaherty (Wm Lee Kinnally, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs Tanning Research Laboratories, Inc. ("Tanning Research") and H.T. Marketing, Inc. ("H.T. Marketing") bring this action against defendants Worldwide Import & Export Corp. ("Worldwide"), Joseph Calcagno and Thomas Scotti, the sole shareholders, directors and officers of Worldwide, and other unknown individuals and companies. Plaintiffs' claim is that defendants wrongfully imported and sold counterfeit copies of plaintiffs' Hawaiian Tropic sun protection products in violation

of sections 32(1)(a) and 43(a) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1114(1)(a) and 1125(a), and various state laws.

The essential facts are not in dispute. Tanning Research owns the Hawaiian Tropic trademark for sun protection products and owns the rights to the trade dress of the packaging of such products. H.T. Marketing has the exclusive right to distribute Hawaiian Tropic products in 42 states including New York.

Between 1987 and 1992 Worldwide imported sun protection products labelled and appearing nearly identical to plaintiffs' trademarked and distinctly packaged Hawaiian Tropic products. Worldwide bought the products from Hawaiian Tropic de Venezuela, a Venezuelan company, which once had a license to manufacture Hawaiian Tropic products. Worldwide then sold the products from its premises in Brooklyn, New York.

In outward appearance the parties' products are substantially the same. Each label bears the Hawaiian Tropic mark, fancifully depicting a palm tree to form the letter "T" in "Tropics," and each product is packaged in dark brown containers. The container caps are different colors, and the plaintiffs' label is printed on foil while the defendants' label is printed on paper.

The composition of the defendants' lotion seized in 1992 is materially inferior. For example, plaintiffs' tests show that one of defendants' products claiming to provide a sun protection factor of 15 for total sun block provided a sun protection factor of only 4.5 to 6 giving only moderate sun protection.

Defendants claim the products they imported prior to 1992 were genuine. They also say they believed at all times that the Venezuelan company was an authorized manufacturer of Hawaiian Tropic products, licensed to ship them to the United States.

But defendants admit receiving letters from Tanning Research dated February 23, 1988 and March 5, 1990 informing them that the importation and sale of merchandise bearing the Hawaiian Tropic trademark was a violation of sections 32 and 43 of the Lanham Act and other laws, and demanding that Worldwide cease and desist.

In February 1992, this court granted plaintiffs' motions for a temporary restraining order, a search and seizure order, and a preliminary injunction. Plaintiffs now move for summary judgment and a permanent injunction.

## I.

Plaintiffs' complaint contains seven counts based on trademark infringement and unfair competition under sections 32(1)(a) and 43(a) of the Lanham Act and common law, and based on injury to business reputation and deceptive business practices under, respectively, sections 368–d and 349 of the New York General Business Law.

■ Because the elements required to succeed under the Lanham Act and under common law are substantially the same, *Gucci America, Inc. v. Action Activewear, Inc.*, 759 F.Supp. 1060, 1063 (S.D.N.Y. 1991), and because violations of section 32(1)(a) may result in the relief sought, the court need only address the alleged violations of that section.

Section 32(1) provides, in pertinent part, that:

Any person who shall, without consent of the registrant—(a) use in commerce any ... counterfeit ... or colorable imitation of a registered mark in connection with the sale ... of any goods ... or in connection with which such use is likely to cause confusion ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114.

■ The central focus of the Lanham Act in this section and in section 43(a), relating to false descriptions and designations of origin, is to protect the holders of trademarks from the promotion and sale of competing products likely to confuse consumers as to their source. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986). Thus, to

prevail plaintiffs need only show that they own a valid trademark and that the defendants' use of the trademark is likely to cause confusion regarding the source of the product. *Id.*

Admittedly Tanning Research owns the valid trademarks in issue, and thus the first element is satisfied.

From the undisputed facts it is plain that the infringing product is likely to cause, indeed is bound to cause, confusion under the criteria established in this circuit. *See, e.g., Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

■ Defendants do not assert that their product visibly differs in any material way from plaintiffs' product but have maintained that they believed that the defendants' products were the genuine article.

Defendants raise two affirmative defenses. First, they say that until 1991 the Venezuelan company was an authorized manufacturer, and, even if it was not, plaintiffs have not proved that it shipped inferior products prior to 1992. Defendants rely in part on cases holding or suggesting that there is no Lanham Act violation where an authorized foreign manufacturer dumps surplus products in the United States because goods authorized and inspected by the trademark registrant are not "copies" within the meaning of section 32. *See Sasson Jeans, Inc. v. Sasson Jeans, L.A., Inc.,* 632 F.Supp. 1525 (S.D.N.Y.1986); *cf. Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.,* 816 F.2d 68, 72–73 (2d Cir.1987). This defense is seemingly only interposed to contest defendants' liability for imports and sales prior to 1992.

Even as a partial defense, it fails. Plaintiffs have submitted the statement of the Vice President and General Counsel of Tanning Research, made under the penalties of perjury, together with documentary evidence, showing that the Venezuelan company's license to manufacture Hawaiian Tropics products was terminated in 1982. In rebuttal, defendants offer a hearsay statement of the presumably self-interested owner of the Venezuelan company together with a statement from a Venezuelan distributor of its products that the Venezuelan company had authority to manufacture Hawaiian Tropic products and ship them to the United States.

These papers raise no genuine issue of fact, and the court determines that the Venezuelan company was not an authorized manufacturer in 1987. Because the cases cited by defendants all involve so-called "gray market" imports by authorized foreign manufacturers, they provide no guidance.

■ Defendants' related assertion that plaintiffs must prove that defendants' unauthorized products were inferior, if correct, would turn the Lanham Act on its head. Congress hardly intended to step through the looking glass into a world in which valid trademark owners were only protected from inartful counterfeiters. The court knows of no legal authority adopting defendants' position.

■ Defendants also raise a defense of laches or detrimental reliance. In summary, they say that plaintiffs knew since 1988 defendants were importing counterfeit products, that plaintiffs published a map in a brochure seemingly indicating that they had a manufacturing plant in or near Venezuela, and that plaintiffs failed to bring legal action against the Venezuelan company then openly using the Hawaiian Tropic trademarks in Venezuela. Defendants claim they were unduly prejudiced by plaintiffs' delay in bringing this action and had reasonably relied on facts lulling them into the belief that the Venezuelan company was an authorized manufacturer.

This is no defense. In 1988 and 1990, plaintiffs sent explicit letters informing defendants of their Lanham Act violations. They could have contacted plaintiffs to clarify the Venezuelan company's status. Instead they chose to "rely" on plaintiffs' then obviously outdated brochure. They "relied" on the hearsay and self-interested representations of the owner of the Venezuelan company. And they "relied" on plaintiffs' failure to sue in Venezuela, not-

withstanding the fact that plaintiffs were not then marketing their products in Venezuela and thus had little incentive to litigate in a distant land.

Defendants were at least willfully blind to their violation of section 32(1)(a) from the time they received plaintiffs' letter in 1988 accusing them of infringement.

## II.

■ Plaintiffs seek treble damages, reasonable attorney's fees, prejudgment interest and costs as provided by section 35 of the Lanham Act.

Section 35 relates to recovery for violations of the Lanham Act. Section 35(a) provides that a plaintiff may recover, subject to equitable principles, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the reasonable costs of the action." In assessing damages, the court may enter a judgment not exceeding three times actual damages according to the circumstances of the case. If the court finds that the amount of recovery is either inadequate or excessive, it may enter judgment for such sum as it finds just. In exceptional circumstances, the court may award reasonable attorney's fees. 25 U.S.C. § 1117(a).

Section 35(b) provides that the court must award, absent extenuating circumstances, three times defendant's profits or plaintiff's damages, whichever is greater, together with reasonable attorney's fees, if the defendant intentionally uses a mark or designation, knowing such mark or designation is counterfeit, in violation of section 32(1)(a). The court may in its discretion award prejudgment interest pursuant to 26 U.S.C. § 6621. 25 U.S.C. § 1117(b).

Whether plaintiffs' are entitled to treble damages, attorney's fees and prejudgment interest turns on whether and when defendants knew they were trading in counterfeit products.

As noted above, defendants acted in willful blindness since 1988. As the Seventh Circuit has observed:

> Willful blindness is knowledge itself.

See Joint Statement on Trademark Counterfeiting Legislation, *supra*, 130 Cong. Rec. at H12076–77 ("Of course, if the prosecution proves that the defendant was 'wilfully blind' to the counterfeit nature of the mark, it will have met its burden of showing 'knowledge' ").

*Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989).

It is true that questions of a defendant's state of mind are rarely suitable for determination on summary judgment. *See, e.g., Finity Sportswear, Ltd. v. Airnit, Inc.*, 631 F.Supp. 769 (S.D.N.Y.1985). But defendants have offered no probative evidence raising a genuine issue of material fact regarding their willfully blind violation.

Plaintiffs may recover pursuant to section 35(a) for violations committed prior to defendants' receipt of Tanning Research's letter dated February 23, 1988, informing defendants of their violation. Plaintiffs are entitled pursuant to section 35(b) to treble damages, together with reasonable attorney's fees, for violations on or after the date of the receipt of that letter.

The case is referred to Magistrate Judge Chrein to hear and report on the amount of damages, attorney's fees, prejudgment interest and costs. The Magistrate Judge may consider whether defendants' damages should be reduced due to extenuating circumstances. *See* Joint Explanatory Committee, 130 Cong.Record H. 12,076 at 12,083 (October 10, 1984) (noting that extenuating circumstances may exist where defendant is an "unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family"), *cited in Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F.Supp. 1143 (S.D.N.Y. 1986). The Magistrate Judge may also consider whether prejudgment interest is appropriate.

## III.

■ Plaintiffs have asked that all relief awarded in this case be applied jointly and severally to defendants Worldwide, Joseph Calcagno, and Thomas Scotti.

These two individuals are the sole shareholders, directors and officers of Worldwide. Plaintiffs' 1990 letter accusing Worldwide of trademark infringement was sent to the attention of Joseph Calcagno. Scotti admits in his affidavit that he visited and purchased sun protection products bearing the Hawaiian Tropic mark from the Venezuelan company. In 1992 plaintiffs' investigator purchased these products from a man named "Joe" and another named "Scotti" who sat at a desk bearing the name plate of "Thomas Scotti." Moreover, neither individual has submitted any evidence to contest the fact that they authorized, directed and participated in the infringement of plaintiffs' trademark. The court therefore finds no issue of fact regarding their individual willful violations of the Lanham Act. Plaintiffs' request is granted. *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268, 1281 (S.D.N.Y. 1986).

Defendants have not contested plaintiffs remaining requests for relief. Plaintiffs' request for a permanent injunction is granted, they are released from their preliminary injunction bond, *Fendi*, 642 F.Supp. at 1146, and they are permitted, pursuant to 15 U.S.C. § 1118, to destroy counterfeit goods seized from plaintiff. *See id.*

So ordered.