## CATERPILLAR, INC., Plaintiff,

v.

## NATIONWIDE EQUIPMENT, and Edward A. Kostenski, Defendants.

No. 94–901–Civ–J–20.

United States District Court, M.D. Florida, Jacksonville Division.

Nov. 14, 1994.

court need not determine the merit or lack thereof of said claims, discussed *supra* at footnote 1.

Timothy J. Conner, Gabel & Hair, Jacksonville, FL, Susan Somers Neal, Mark G. Davis, Robert W. Zelnick, William, Brinks, Hofer, Gilson & Lione, Washington, DC, Eugene C. Goodale, Caterpillar, Inc., Peoria, IL, for plaintiff.

David M. Novak, Bell, Boyd & Lloyd, Chicago, IL, Charles P. Pillans, III, Oliver David Barksdale, Bedell, Dittmar, DeVault & Pillans, P.A., Jacksonville, FL, Eugene F. Friedman, Eugene F. Friedman, Ltd., Chicago, IL, for defendants.

## ORDER

SCHLESINGER, District Judge.

Before the Court is Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2). Defendants' Responsive Brief in Opposition to Motion for Preliminary Injunction (Doc. No. 15) was filed October 12, 1994. A Preliminary Injunction Hearing was held before the undersigned.

■ A preliminary injunction is an "extraordinary and drastic remedy" and should not be granted unless the movant meets its burden of persuasion with respect to each of the following prerequisites: (1) a substantial likelihood of success by the movant on the merits; (2) that the movant will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party; and (4) that the injunction, if issued, "will not disserve the public interest." *Bryan v. Hall Chemical Co.*, 993 F.2d 831, 835 (11th Cir. 1993) (citing *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983)).

Plaintiff, Caterpillar, Inc. ("Caterpillar"), has brought this action against Defendants, Nationwide Equipment ("NWE") and Edward A. Kostenski, for trademark infringement and unfair competition. It is undisputed that Plaintiff owns the trademarks CAT, CAT DIESEL POWER, and CATERPILLAR.

Caterpillar entered into an agreement with a corporation of Turkey, Cukurova Insaat Makineleri Sanayi Ve Ticaret Anonim Sirketi ("Cukurova"), under which Caterpillar granted Cukurova certain limited rights to manufacture products overseas using components manufactured by Caterpillar. Under the terms of this agreement, Cukurova was prohibited from affixing any Caterpillar trademarks to the products, although Caterpillar's trademarks were allowed to appear on component goods purchased from Caterpillar to be incorporated into the finished product. *See* Complaint at ¶ 3; Declaration of R.R. Atterbury III. Cukurova was required to, and did, use its own trademark on the equipment it manufactured.

Defendants offered for sale, as recently as August 9 and 11, 1994, Cukurova products manufactured using Caterpillar components and identified them to potential customers by using Caterpillar's trademarks. *See* Exhibit

Nos. 10 and 11 to the Complaint. Defendants, however, did not have authorization from Caterpillar to advertise this machinery as Caterpillar's. It also appears that Defendants obtained certificates of origin from Caterpillar for the component parts of the machinery and thereafter used those certificates to falsely represent that the machines manufactured by Cukurova were genuine Caterpillar machines.

Defendants argue that the machines offered for sale were genuine Caterpillar and that the only components added by Cukurova were several accessories: the bucket, counterweights and enclosed cab.

To determine the likelihood of success on the merits, the Court looks at the standards proscribed by substantive law. Section 43(a) of the Lanham Act specifically prohibits the use of false descriptions and false designations of origin when advertising or selling goods or services in commerce. *See* 15 U.S.C. § 1125(a).

It well established in trade identity infringement cases that plaintiffs need not show wrongful intent on the part of defendant.[1] An injunction is proper if the natural consequences of a defendant's conduct are such as to cause deception. All Plaintiff has to show is the objective fact of infringement, because whatever the Defendants' subjective intent, their act has the same detrimental effect upon Plaintiff. 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.00.50 (1991).

■ The tests for infringement of a trademark and for unfair competition are the same: whether there is a likelihood of confusion as to source or sponsorship of the two products at issue. In an action brought under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A), Plaintiff need not provide proof of actual confusion. Plaintiff only needs to show likelihood of confusion. *See Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d

Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991).

"A trademark serves three distinct and separate purposes: (1) It identifies a product's origin, (2) it guarantees the product's unchanged quality, and (3) it advertises the product. Injury to the trademark in any of its offices as an identifying, guaranteeing or advertising device should suffice to constitute an infringement thereof." 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.06, at 41 (1991).

■ If a finished article is made of parts or materials manufactured by a particular producer, who may have a special reputation for quality, the seller of the finished article is allowed to use the latter's mark to identify the source of such parts or materials, and the manufacturer of the parts or materials cannot protest on the ground that the finished article is of inferior workmanship. 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.21, at 189 (1991); *see Scarves by Vera, Inc. v. American Handbags, Inc.*, 188 F.Supp. 255 (S.D.N.Y.1960); *Forstmann Woolen Co. v. J.W. Mays, Inc.*, 89 F.Supp. 964 (E.D.N.Y. 1950).

■ However, if the trademarked item loses its identity when incorporated into a product made by one other than the trademark owner, the trademark should not be adopted for the entire new article, except with the consent of the component manufacturer. 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.21, at 189 (1991); *see Vick Chemical Co. v. Strohmeier*, 39 F.2d 89 (E.D.Pa. 1930); *Standard Oil Co. v. California Peach & Fig Growers*, 28 F.2d 283 (D.Del.1928); *Lambert Pharmacal Co. v. Listerated Co.*, 24 F.2d 122, 123 (S.D.Tex.1928); *B.B. & R. Knight v. W.L. Milner & Co.*, 283 F. 816, 819 (N.D.Ohio 1922).

Under the doctrine enunciated in *Prestonettes v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1928), Defendants may state the

---

1. Of Course, Defendants' good faith, or lack thereof, may influence the measure of damages, i.e., punitive, compensatory or nominal. "The very fact that the defendant claims to have acted in good faith may even eliminate his objection to an injunction, for in that case the defendant himself should be sincerely interested in averting any continuance of the wrong." 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.00.50, at 2–3 (1991).

nature of the component parts and their source, and Defendants may even use the trademark of the component so as to indicate its relation to the new article offered by Defendants. 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.21, at 189 (1991); *see, e.g., Forstmann Woolen Co. v. Murray Sices Corp.,* 144 F.Supp. 283 (S.D.N.Y.1956) (Defendant was entitled to use Plaintiff's name and trademark to inform its customers that its garments were made of Plaintiff's fabric). But, Defendants must use Plaintiff's mark discreetly, not with an emphasis likely to lead the public into a false belief that the entire new product was manufactured by Caterpillar.

■ Although the purchaser of trademarked goods acquires no ownership of the trademark, if the mark has been affixed to the goods by the authority of Plaintiff, Plaintiff cannot normally insist that retailers who acquired clear title to the product are obligated to remove the trademark or refrain from using the mark in connection with advertising or sale. 3A RUDOLF CALLMAN, The Law of Unfair Competition, Trademarks and Monopolies § 21.13 (1991). The resale or advertising for sale of the genuine Plaintiff's article in its original form, under Plaintiff's trademark is not trademark infringement. However, the product in the instant action is not Plaintiff's genuine article.

■ Defendants argue that there is no violation of the Lanham Act because the articles they are selling are genuine Caterpillars. After all, the equipment they are trying to sell were produced by Cukurova, the Turkish corporation licensed by Caterpillar to manufacture the equipment using Caterpillar's components. Thus, Defendants argue that since the machinery is genuine Caterpillar, Defendant's advertising as such cannot cause confusion. It is true that the unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement. *See Shell Oil Co. v. Commercial Petroleum, Inc.,* 928 F.2d 104 (4th Cir.1991); *NEC Electronics v. CAL Circuit Abco,* 810 F.2d 1506 (9th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); *Babbit Electronics v.*

*Dynascan Corp.,* 828 F.Supp. 944, 956 (S.D.Fla.1993). However, "identical goods sold in an unauthorized manner are not genuine for purposes of the Lanham Act." *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1023 (2d Cir.1989); *see Hunting World, Inc. v. Reboans, Inc.,* 24 U.S.P.Q.2d 1844, 1849 (N.D.Ca.1992). A product is not "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer. *See Shell Oil,* 928 F.2d at 104. In *El Greco Leather Products Co., Inc. v. Shoe World, Inc.,* 806 F.2d 392 (2d Cir.1986), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987), the Second Circuit held that goods manufactured by agreement with the holder of a trademark, but distributed without the holder's authorization, could not be considered genuine for purposes of trademark protection. The Second Circuit held that if the goods are not inspected by the trademark owner to insure quality, they are not genuine. *See id.* In so holding, the court noted that "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *Id.* Similarly, in *Shell Oil v. Commercial Petroleum, Inc.,* 928 F.2d 104 (4th Cir.1991), the court held the use of Shell's trademark by a bulk oil wholesaler violated the Lanham Act because "a product is not truly 'genuine' unless it is manufactured and distributed under quality control established under the manufacturer." *Id.* at 107.

■ During oral argument, Defendants also argued that the products they are selling are not inferior to Plaintiff's. After all, the majority of the components of the trucks are Caterpillar. However, inferiority is not a prerequisite to a finding of a Lanham Act violation. *See Babbit Electronics,* 828 F.Supp. at 957 (citing *Tanning Research Lab v. Worldwide Import and Export Corp.,* 803 F.Supp. 606, 609 (E.D.N.Y.1992)). There can be a Lanham Act violation even if Plaintiff's and Defendants' goods are of equal quality. *See Truck Equipment Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1216 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50

L.Ed.2d 139 (1976). Even if Defendants' product rivals or exceeds the quality of Plaintiff's product, the unauthorized product may still deprive the registrant of its ability to shape the contours of its reputation. *See Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.,* 537 F.Supp. 587, 597 (D.P.R.1982).

Even if Plaintiff allowed Cukurova to sell the equipment as Caterpillars in Turkey, Defendants would still be unable to sell the product as a Caterpillar in the United States because of the sufficient differences between the two products. In such a case, the scope of protection would turn on the degree of differences between the product authorized for the domestic market and the allegedly infringing product. *See Societe Des Produits Nestle S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633 (1st Cir.1992).

"Because products are often tailored to specific national conditions, a trademark's reputation (and, hence, its goodwill) often differs from nation to nation." *Societe Des Produits Nestle,* 982 F.2d 633, 636 (citing *Lever Bros. Co. v. United States,* 877 F.2d 101, 108 (D.C.Cir.1989); *Osawa & Co. v. B & H Photo,* 589 F.Supp. 1163, 1173 (S.D.N.Y. 1984)). Territorial protection kicks in under the Lanham Act where two merchants sell physically different products in the same market and under the same name. *See Lever Bros.,* 877 F.2d at 107. The lawful importation of "identical" goods carrying a valid foreign trademark is allowed. *See Societe Des Produits Nestle,* 982 F.2d at 637. However, where material differences exist between the two products, the Lanham Act honors the important linkage between trademark law and geography.

Defendants' liability turns on the *vel non* of material differences between the products of a sort likely to create consumer confusion. "[A] reviewing court must ... be concerned of subtle differences, for it is by subtle differences that consumers are most easily confused. For that reason, the threshold of materiality must be kept low enough to take account of potentially confusing differences— differences that are blatant enough to make it obvious to the average consumer that the origin of the product differs from his or her expectation." *Id.* at 641. "The existence of any difference between the registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Trade–Mark claim." *Id.* "Any higher threshold would endanger a manufacturers investment in product goodwill and unduly subject consumers to potential confusion by severing the ties between a manufacturer's protected mark and its associated bundle of traits." *Id.*

The Court finds the material differences between the Cukurova equipment and Plaintiff's equipment are the quality control methods and the composition. Differences in quality control methods are important to the consumer. The fact that Plaintiff did not oversee the assembly of the Cukurova machinery is significant. *See El Greco,* 806 F.2d at 395 ("actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain"). Variance in quality control creates a presumption of customer confusion as a matter of law. *See Shell Oil,* 928 F.2d at 108. The Court is also hesitant to dismiss as trivial the fact that Cukurova supplied the following parts to the machinery: the bucket, counterweights and enclosed cab.

The Court concludes that Plaintiffs are substantially likely to prevail on their claim that Defendants current usage of Plaintiff's trademarks in their advertisements constitute trademark infringement, as Defendants' advertising appears to be false and confusing as to the source of the product its customer is buying. Defendants use of Plaintiff's trademark is likely to cause confusion in minds of potential buyers as to source, affiliation or sponsorship of products that were not approved by Plaintiff.

Advertising an article of different quality and identifying it with Plaintiff's trademark constitutes trademark infringement. Once the quality of the final product depended on how Cukurova handled the trademarked goods, Defendants should not be able to make unqualified use of Plaintiff's trademark. Plaintiff's marks serve as assurances of unchanged quality, and if such use is permitted without consent, the trademark

owner is exposed to the risk that the product may not measure up to its established reputation, and the value of the mark as a guaranty would be endangered. Unauthorized references to the trademark of another must be truthful and must not cause confusion as to source or sponsorship of the product advertised. The Court finds that Defendants' advertising is likely to confuse consumers who rely on Caterpillar's trademarks as an indication of quality.

Defendants' representation to potential customers that the equipment is Caterpillar machinery constitutes trademark infringement and unfair competition because Defendants fail to disclose to the public fully and truthfully the manner in which they have used Plaintiff's trademarked components to produce the equipment. Defendants' misleading and false advertising falsely conveys the impression that Caterpillar intended the importation of the Cukurova machinery into the local market.

Defendants are entitled to inform its customers that the basic components of its machinery are parts manufactured by Caterpillar. *See Forstmann Woolen Co. v. Murray Sices Corp.*, 144 F.Supp. 283, 290 (S.D.N.Y. 1956). Defendants may sell the equipment so long as they clearly represent the product in such a way that there will be no reasonable prospect of confusing the purchasing public. Purchasers should be made aware as to the true source of both the labor and the components which make up the product.

The Court also finds that the other factors needed in order to issue a preliminary injunction have been met. In trademark infringement cases, irreparable harm is presumed. There is no adequate remedy at law for any damage to Caterpillar's goodwill and business reputation caused by Defendants alleged trademark infringement.

The purpose of the Lanham Act is to protect the public and encourage business activity by preventing confusion as to the origin of goods and services. The public has an interest in being able to properly identify the source of products. Thus, the Court finds that an injunction will serve the public interest.

The Court also finds that Defendants will suffer no harm from being restrained from doing that which is illegal. The Court is not enjoining Defendants from selling the equipment so long as it is accurately and honestly identified.

The Court will not require Plaintiff to post a security bond. The Court has discretion to waive this requirement. *See Baldree v. Cargill, Inc.*, 758 F.Supp. 704 (M.D.Fla.1990), *aff'd*, 925 F.2d 1474 (11th Cir.1991); *Ray v. School Dist. of DeSoto County*, 666 F.Supp. 1524 (M.D.Fla.1987).

Accordingly, it is **ORDERED AND ADJUDGED:**

(1) Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2) is **GRANTED;**

(2) Defendants, Edward A. Kostenski and Nationwide Equipment, and any of their principals, officers, agents, servants, employees, and successors are immediately **ENJOINED** from: (a) using the Caterpillar trademarks in connection with the promotion, advertisement, display, sale or offering for sale of any product manufactured by Cukurova using Caterpillar's components, in such fashion as to falsely connect such product as being a genuine Caterpillar; and (b) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subsection (a); and

(3) Defendants shall immediately take steps to issue flyers to all of those previously contacted by Defendants regarding the Cukurova equipment and notify them that the products previously offered are not genuine Caterpillar equipment. Defendants may inform them that the products were produced using Caterpillar components. However, Defendants must sedulously avoid any usage that might convey the impression that the product was made by the trademark owner, Caterpillar. Defendants must also sedulously avoid any usage that might convey the impression that its product is sponsored or approved by the trademark owner, Caterpillar.

**DONE AND ENTERED.**