928 F.2d 104
 18 U.S.P.Q.2d 1156
 SHELL OIL COMPANY, a Delaware Corporation, Plaintiff-Appellee,
v.
COMMERCIAL PETROLEUM, INCORPORATED, a North Carolina
Corporation, Defendant-Appellant.
SHELL OIL COMPANY, a Delaware Corporation, Plaintiff-Appellant,
v.
COMMERCIAL PETROLEUM, INCORPORATED, a North Carolina
Corporation, Defendant-Appellee.
 Nos. 89-1592, 89-1596.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 29, 1990.
Decided March 11, 1991.
 
 Roger Lee Edwards, Edwards & Bruce, P.A., Mooresville, N.C., for defendant-appellant.
 Thomas Joseph Ward, Sr., Ward, Lazarus & Grow, Washington, D.C., argued (Harold R. Bruno, III, John T. Lanahan, Ward, Lazarus & Grow, Washington, D.C.; Robert J. Wishart, Wishart, Norris, Henninger & Pittman, P.A., Burlington, N.C., Kimbley L. Muller, Shell Oil Co., Houston, Tex., on brief), for plaintiff-appellee.
 Before HALL and MURNAGHAN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Commercial Petroleum, Inc. ("Commercial"), appeals the order enjoining it from infringing upon certain Shell Oil Company ("Shell") trademarks. Shell cross-appeals the district court's refusal to award damages and attorney's fees. Finding no error, we affirm.
 
 I.
 
 2
 Shell produces motor oils for use in heavy-duty trucks under the identifying trademarks "Rotella" and "Shell Rotella T." These oils are sold in packaged and bulk form through numerous licensed distributors and jobbers. Since 1957, the subject marks have been marketed and widely publicized in North Carolina and throughout the United States.
 
 
 3
 Shell imposes stringent quality control standards on its trademark licensees.[1] Under these standards, Shell requires its authorized distributors and jobbers to maintain storage facilities and transportation procedures that assure the integrity of the motor oils. Stringent quality control standards are necessary because the bulk lubricant goes through numerous tanks, tanker trucks, and pumps during the distribution process, and the oil can easily be contaminated by residuals.
 
 
 4
 Commercial is a wholesaler of many brands of bulk and packaged oil. For several years, Commercial sold both packaged and bulk Shell motor oil as "Shell Rotella T." After receiving a written warning from Shell concerning use of its trademarks on bulk oil sales, Commercial discontinued using the actual trademarks on its customer invoices for Shell bulk oil sales and substituted the symbols "SRT" or "RT." However, when questioned by customers about the change, Commercial readily confirmed that all oil billed under these designations was in fact "Shell Rotella T" motor oil. Although customers may have been generally aware that it was not an authorized Shell distributor, Commercial eventually included a disclaimer to that effect on its invoices and delivery tickets.
 
 
 5
 In handling bulk oil, Commercial employed its own quality control standards, which were less stringent than Shell's and not approved by Shell.[2] Commercial has never been affiliated with Shell as a jobber or otherwise; it purchased bulk Shell oil from Shell's authorized distributors and then resold it.
 
 
 6
 Shell alleged in its complaint that Commercial's use of Shell's marks and the use of substitute marks constituted unfair competition and trademark infringement in violation of the Lanham Trademark Act of 1946, 15 U.S.C. Secs. 1114(1) and 1125(a) (1988),[3] because it falsely indicated affiliation, sponsorship or approval by Shell and created a likelihood of confusion among prospective purchasers. Shell sought an injunction, pursuant to 15 U.S.C. Sec. 1116 (1988) and North Carolina General Statute Sec. 75-1.1 (1988). Shell also sought damages and profits derived from the sale of bulk oil under its marks, pursuant to 15 U.S.C. Sec. 1117 (1988) and North Carolina General Statute Sec. 75-1.1. Finally, Shell sought treble damages, pursuant to North Carolina General Statute Sec. 75-16 (1988).
 
 
 7
 After a bench trial, the district court concluded that Commercial had competed unfairly with Shell and had infringed on Shell's trademarks. The court enjoined Commercial from using the labels "Rotella," "Shell Rotella T," "RT," or "SRT," in connection with the advertising, marketing, or sale of bulk oil without authorization from Shell. The court declined to award any damages based on its finding that Shell had suffered none. Commercial appealed, and Shell cross-appealed.
 
 II.
 
 8
 Commercial raises two issues: (1) whether trademark law applies to Commercial's sale of genuine bulk oil under Shell's marks, and (2) if applicable, whether Commercial's sale of bulk oil under Shell's marks creates a likelihood of customer confusion.
 
 
 9
 First, Commercial argues that the district court erred in finding trademark infringement, because it resells genuine bulk oil under a true mark. As a general rule, trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent. NEC Electronics v. CAL Circuit Abco, 810 F.2d 1506 (9th Cir.), cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987). Therefore, we must decide whether Commercial sold a "genuine" product under Shell marks in order to determine whether trademark law applies.
 
 
 10
 A product is not truly "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer. El Greco Leather Products Co. v. Shoe World, 806 F.2d 392, 395 (2d Cir.1986), cert. denied, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987). The Lanham Trademark Act affords the trademark holder the right to control the quality of the goods manufactured and sold under its trademark. Id. "[T]he actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." Id.
 
 
 11
 The district court found that the quality control standards employed by Shell for the transportation, delivery and storage of bulk oil were necessary to maintain the quality of its bulk oil, and, in fact, Shell's quality control standards were an integral part of the bulk product identified by the marks. While Commercial does not dispute the importance of quality control standards, it contends that it employs its own standards that guarantee the quality of the oil. However, in order to maintain the genuineness of the bulk oil, the quality standards must be controlled by Shell. Id. at 395-96. It is insufficient that Commercial employed its own quality standards. Without Shell's enforcement of its quality controls, the bulk oil sold by Commercial was not truly "genuine."
 
 
 12
 Therefore, by marketing the bulk oils under Shell's trademarks according to its own quality controls, Commercial violated Shell's right under the Lanham Act to retain control of the use of its trademark in the sale of the product to the end user. Id. at 392. The court's findings of fact are not clearly erroneous. We affirm its application of trademark law.
 
 
 13
 Second, Commercial argues that, even assuming its use of Shell's trademarks implicates trademark law, its sale of bulk oil under Shell's marks did not create a likelihood of customer confusion. The issue of confusion is key because "[l]iability under the Lanham Act for trademark infringement is predicated on use of a registered trademark that 'is likely to cause confusion.' " Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1185 (5th Cir.1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).
 
 
 14
 Commercial cites Soweco for the proposition that the court must "consider whether or not actual confusion has occurred" in order to determine whether a likelihood of confusion existed. Commercial argues that there was no likelihood of confusion, based on its contention that the evidence proved that customers knew that it was not an "authorized distributor" of Shell. Soweco does not support Commercial's proposition, however. Though Soweco lists "actual confusion" as one factor that courts must consider, it clearly states that "[p]roof of actual confusion is unnecessary; the likelihood of confusion is the determinative factor." Id. at 1185-86 (emphasis in original).
 
 
 15
 The use of the Shell marks implies that the product has been delivered according to all quality control guidelines enforced by the manufacturer. The district court found that Commercial does not follow Shell quality control procedures, and there was, therefore, a likelihood of customer confusion as to the quality and source of the bulk oil. The court considered the evidence "more than ample" to show likelihood of confusion,[4] and the court's findings of fact are not clearly erroneous. We affirm its conclusion that Commercial's use of Shell's marks was deceptive and likely to confuse consumers who rely on the trademarks as symbols of Shell quality.[5]
 
 III.
 
 16
 Shell cross-appeals the district court's denial of damages.[6] Shell argues that the district court incorrectly interpreted the Lanham Act by concluding that a finding of actual losses is a prerequisite to an award of damages. In denying an award of damages, the court stated simply that "[t]he evidence does not show any damages suffered by Shell and none will be assessed." Shell Oil Co. v. Commercial Petroleum, Inc., 733 F.Supp. 40, 45 (W.D.N.C.1989). Shell is correct that equitable damages, as measured by the infringer's profits, can be awarded to the trademark owner without proof of actual loss. Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354 (10th Cir.1954). However, the court has broad discretion to award any monetary relief necessary to serve the interests of justice. 15 U.S.C. Sec. 1117 (1988); Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710 (8th Cir.1980). Based on the court's statement, we do not believe that it misinterpreted the requirements for awarding damages.
 
 
 17
 Moreover, the court found that, though some of Shell's distributors may have suffered losses, Shell suffered no actual damages as a result of Commercial's infringement. Though the district court could have awarded Shell some or all of Commercial's profit, it did not abuse its discretion by not doing so.[7]
 
 AFFIRMED
 
 
 [1]
 Examples of procedures required by Shell are the use of dedicated lines, pumps and tanks, as well as the steam cleaning of tankers prior to filling with the product
 
 
 [2]
 For example, Commercial hauls the subject oils immediately after hauling diesel fuel, without cleaning the tanker
 
 
 [3]
 Title 15 U.S.C. Sec. 1114 provides:
 (1) Any person who shall, without the consent of the registrant-
 (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...
 ....
 shall be liable in a civil action by the registrant for the remedies hereinafter provided.
 Title 15 U.S.C. Sec. 1125(a) provides:
 Any person who ... uses in commerce any word, term, name, symbol, ... or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
 (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, ...
 ....
 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 
 
 [4]
 For example, one defense witness testified at trial that, notwithstanding the fact that Commercial's president had told him that his company was not an authorized distributor of Shell, and that he had read the disclaimer Commercial placed on its invoices, he would look to Shell if any of his motors were damaged by the use of the oil
 
 
 [5]
 Based on our affirmance of the court's finding a likelihood of customer confusion under the Lanham Trademark Act, we find it unnecessary to reach the issue of unfair competition under North Carolina state law, N.C.Gen.Stat. Sec. 75-1.1 (1988)
 
 
 [6]
 Shell also cross-appeals the district court's denial of an award of attorney's fees under the Lanham Act and North Carolina law. Under both the Lanham Act and state statute, attorney's fees are not awarded as a matter of right; they are within the discretion of the trial court. Bandag, Inc. v. Al Bolser's Tire Stores, 750 F.2d 903, 917 (Fed.Cir.1984); Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 747 (7th Cir.1985); Mayton v. Hiatt's Used Cars, Inc., 45 N.C.App. 206, 262 S.E.2d 860 (1980) (under N.C.Gen.Stat. Sec. 75-16.1, attorney's fees are within discretion of court but are contingent upon finding actual damages). Finding no abuse of discretion, we affirm the court's denial of attorney's fees
 
 
 [7]
 Shell also argues that based on the court's finding of unfair competition, damages should have been assessed and trebled under North Carolina General Statute Sec. 75-16 (1988). Section 75-16 states in pertinent part: "if damages are assessed ... treble ... the amount." Proof of actual damages is an essential element for an award of treble damages. Ellis v. Smith-Broadhurst, Inc., 48 N.C.App. 180, 268 S.E.2d 271 (1980). Because we affirm the court's finding no actual damages, Shell is not entitled to treble damages under state law