TRACFONE WIRELESS, INC.,
a Delaware Corporation,
Plaintiff,

v.

ANADISK LLC, et al., Defendants.

Case No. 09–23670–CIV.

United States District Court,
S.D. Florida.

Feb. 18, 2010.

Aaron Stenzler Weiss, Steven Jeffrey Brodie, Carlton Fields, Miami, FL, James

Blaker Baldinger, Carlton Fields PA, West Palm Beach, FL, for Plaintiff.

*FINAL JUDGMENT AND PERMA-NENT INJUNCTION AGAINST DEFENDANTS, ANADISK LLC, DNMA66, LLC AND DAVUT KI-LINC a/k/a DAVID KILINC*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon Plaintiff, TRACFONE WIRELESS, INC.'s ("TracFone"), motion for entry of default final judgment and a permanent injunction (the "Motion") brought in the above-captioned lawsuit against Defendants, ANADISK LLC, a Pennsylvania limited liability company ("Anadisk"), DNMA66, LLC. a Florida limited liability company ("DNMA66"), and DAVUT KI-LINC a/k/a DAVID KILINC, individually ("Kilinc") (collectively, "Defendants").

Upon review of the Motion, the record, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### FACTUAL BACKGROUND

#### I. Plaintiff, TracFone Wireless, Inc.'s Business

TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the TracFone, Net10, SafeLink and Straight Talk brands (hereinafter referred

to as "TracFone Prepaid Phones" or "Phones"). (Amended Complaint ¶ 34) TracFone customers prepay for wireless service by purchasing TracFone airtime cards and wireless phones specially manufactured for TracFone by leading mobile phone manufacturers, such as Motorola and Nokia. *Id.* Under this business model TracFone delivers affordable Phones to consumers who often cannot afford the fees for traditional monthly service. *Id.* at ¶ 36

TracFone subsidizes its customers' acquisition of its Phones by selling the Phones to retailers for much less than the phones cost TracFone from the manufacturers. *Id.* TracFone recoups this subsidy by selling prepaid airtime to customers who buy subsidized Phones. *Id.* TracFone takes several steps to protect its investment in the subsidized Phones, which are designed to make sure that the Phones can only be used on TracFone's wireless network. *Id.* at ¶ 37 Specifically,

- the Phone manufacturers install TracFone's proprietary software on the Phones that prevents them from being used on other wireless systems; and,

- the Phones are sold subject to terms and conditions—which are printed on the outside of the retail packaging of the Phones [1] and are set forth in printed inserts included in the packaging of

---

1. The retail packaging in which new TracFone Phones are sold contains the following language printed in red banner on the outside of the package, and phones sold through the Net10, SafeLink and Straight Talk brands contain similar language:

 THIS TRACFONE HANDSET IS SOLD EXCLUSIVELY FOR USE WITH TRACFONE PREPAID WIRELESS SERVICE. YOU AGREE NOT TO TAMPER WITH OR ALTER THE SOFTWARE OR HARDWARE IN THIS PHONE, OR ASSIST OTHERS IN SUCH ACTS, OR TO EXPORT TRACFONE HANDSETS OUTSIDE OF THE UNITED STATES. THESE ACTS VIOLATE TRACFONE'S RIGHTS AND COULD VIOLATE STATE AND FEDERAL LAWS. TRACFONE WILL PROSECUTE VIOLATORS TO THE FULL EXTENT OF THE LAW. BY PURCHASING OR OPENING THIS PACKAGE, YOU ARE AGREEING TO THESE TERMS AND THE TERMS AND CONDITIONS OF SERVICE IN THE ENCLOSED USER GUIDE (AND AVAILABLE AT *WWW.TRACFONE.COM* ).
 *Id.* at ¶¶ 44–50

the Phones—that restrict and limit the sale and use of the Phones. *Id.* at ¶¶ 37, 43–53

In connection with advertising and selling its Phones, TracFone has used, and continues to use, several trademarks (the "Marks") in commerce including the marks TracFone, NET10, SafeLink and Straight Talk.[2] *Id.* at ¶¶ 38, 40 The Marks constitute the lawful, valued, subsisting and exclusive property of TracFone. *Id.* at ¶¶ 39, 41 Only TracFone and its authorized, affiliated agents are permitted to use the Marks. *Id.* at ¶ 82

TracFone's Marks are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services. *Id.* at ¶¶ 39, 41 The Marks also signify distinctive products and services of high quality and provide actual notice that TracFone's Phones are intended for use solely within TracFone's network. *Id.* Accordingly, the Marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone. *Id.*

TracFone has learned that although large quantities of its TracFone Prepaid Phones are being purchased at retailers throughout the United States, a significant number of these TracFone Prepaid Phones are not being activated for use on the TracFone network. *Id.* at ¶ 54 Instead, entities and individuals are purchasing and selling TracFone Prepaid Phones in bulk quantities for use outside of the TracFone Prepaid Wireless Service and Coverage Area. *Id.* at ¶ 55. The Phones are removed from their original packaging, shipped overseas, and "unlocked" or "reflashed." *Id.* at ¶ 55[3] As a result of these actions, TracFone loses both: (1) the subsidy that it provided when selling the phone to the retailer; and (2) the revenue from selling airtime on that handset. *Id.* at ¶ 57

## II. Defendants' Business

Defendants are engaged in business practices involving the bulk purchase and resale of TracFone Prepaid Phones, computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software installed in the Phones, and trafficking of the Phones for profit. *Id.* at ¶ 58

For example, in January 2009, TracFone was made aware that Defendants Anadisk, DNMA66, and Kilinc were selling TracFone W175g Phones. TracFone retained a private investigation company, Stumar Investigations ("Stumar"), to investigate the situation and determine the extent of their unlawful activities. (Garcia

---

**2.** In particular, TracFone owns and has also used the following trademarks: (1) Incontestable United States Trademark Registration No. 2,114,692 for TracFone, based on a first use date of June 30, 1996; (2) United States Trademark Registration Nos. 3,224,929 and 3,222,623 for TracFone Nationwide Prepaid Wireless and Design based on a first use dates of December 31, 2005; (3) United States Trademark Registration No. 3,118,250 for NET10, based on a first use date of March 1, 2005; (4) United States Trademark Registration Nos. 3,255,754, 3,253,506, and 3,251,389 for NET10 Pay As You Go Made Simple and Design, based on first use dates of December 31, 2005; (5) United States Trademark Registration No. 3,630,321 for SafeLink Wireless and Design, based on a first use date of September 12, 2008; and (6) Straight Talk and Straight Talk and Design, based on a first use date of May 29, 2009. *Id.* at ¶¶ 38, 40

**3.** The process of "unlocking" or "reflashing" TracFone Prepaid Phones involves circumventing the electronic protections installed in the handset, and then erasing, removing and/or disabling the TracFone Prepaid Software. Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable within TracFone's prepaid wireless virtual network, and is operable on other cellular networks. TracFone no longer has a revenue source to recoup the invested subsidy on that phone. (Garcia Decl. at ¶ 21)

Decl. ¶ 18). On Wednesday, March 18, 2009, Stumar received a COD shipment of 40 TracFone W175 Phones from Defendant Kilinc. (Talatham Decl. ¶ 8). The shipment consisted of 40 handsets, 40 battery covers, 40 batteries and 40 charges. *Id.* TracFone's logo was clearly evident on the back of the Phones. *Id.* However, the Phones were not in the original packaging and the warranty information, instruction manuals and Subscriber Identity Module's (SIM) cards[4] were missing. *Id.* TracFone has also submitted evidence that Defendants solicited to sell an additional 4,950 TracFone Prepaid Phones.

A genuine TracFone W175 is sold with a SIM card, warranty information and instruction manuals. (Garcia Decl. ¶ 20). If a user removes the SIM card, the TracFone Prepaid Phone will be inoperable. *Id.* For example, without a SIM card, the TracFone Prepaid Phone will turn on and the user will see a splash banner identifying the Phone as a TracFone Prepaid Phone. *Id.* The splash banner appears for approximately ten (10) seconds and is then replaced with a screen the instructs the user to insert the SIM card. *Id.* Unless the Phone is "unlocked" or "reflashed", the Phone will not operate without inserting a TracFone SIM card. *Id.*

## III. *The Present Litigation*

As a result of Defendants' business activities, TracFone asserted claims against the Defendants for Breach of Contract; Federal Trademark Infringement in violation of 15 U.S.C. § 1114.; Federal Unfair Competition in violation of 15 U.S.C. § 1125(a); Common Law Unfair Competition; Contributory Trademark Infringement; Copyright Infringement of Software in violation of Title 17 of the United States Code; Circumvention of Technological Measures That Control Access to Copyrighted Software and Trafficking in Services That Circumvent Technological Measures Protecting Copyrighted Software in violation of the Digital Millennium Copyright Act ("DMCA"); dilution of TracFone's marks, 17 U.S.C. § 1201, *et seq.;* Tortious Interference with Business Relationships and Prospective Advantage; Tortious Interference with Contract; Dilution of TracFone's Trademarks under common law unfair competition; conspiracy to induce breach of contract; civil conspiracy; and unjust enrichment. TracFone has succeeded in proving its claims and Defendants are hereby permanently enjoined and jointly and severally liable to TracFone for the damages set forth herein.

## *JURISDICTION AND VENUE*

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1338, and 17 U.S.C. § 1203 because TracFone's claims arise under federal law, specifically, the United States Copyright Act, Title 17 of the United States Code, and United States Trademark Act, Title 15 of the United States Code. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

Defendants are subject to the general personal jurisdiction of this Court because they have had continuous and substantial business connections to the State of Florida, including conducting business with companies located in Florida. DNMA66 is a Florida business entity operated by Defendant Davut Kilinc and Defendant Kilinc

---

**4.** A SIM card is a portable memory chip that is used to store information on the Phone.

(Garcia Decl. ¶ 20)

routinely uses both business entities—DNMA66 and Anadisk—during the same transaction. (Amended Complaint ¶¶ 18–21). Moreover, invoices that Kilinc issues on DNMA66 forms, bearing DNMA66's logo, list Anadisk's website and an Anadisk email as the relevant contact information. *Id.* ¶ 18 In this regard, Defendant Kilinc has treated each company—DNMA66 and Anadisk—as alter egos of each other, and Anadisk is thus, like DNMA66, subject to jurisdiction in Florida. *Id.*

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b), and 28 U.S.C. § 1400, because a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendants' conduct occurred in this District, and the Defendants are subject to personal jurisdiction in this District.

## STANDARD OF REVIEW

A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). "With regard to the measure of damages, the allegations contained in the complaint are not considered admissions by virtue of the default; [r]ather, the Court determines the amount and character of damages to be awarded." *Zambrana v. Geminis Envios Corp.*, No. 08–20546–CIV, 2009 WL 1585995 at *2 (S.D.Fla. June 4, 2009) (internal quotations and citations omitted). According, TracFone can establish the amount of damages by submitting sufficient evidence to support the request for damages. *Id.* (internal quotations omitted). In accessing damages without a hearing, it is appropriate for the Court to utilize "mathematical calculations." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir.1985).

## DISCUSSION

### I. *TracFone's Trademark Related Claims (Counts One, Two and Four)*

Section 32(1) of the Lanham Act protects against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43(a) of the Lanham Act states that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person,

or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

■ "[T]he Court interprets this Section [§ 43(a) ] as having created a federal cause of action for infringement of unregistered trademark or trade dress and concludes that such a mark or trade dress should receive essentially the same protection as those that are registered." *Two Pesos, Inc.*

*v. Taco Cabana, Inc.*, 505 U.S. 763, 776, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring). Accordingly, in order to prevail on a claim of trademark infringement under Sections 32 and 43, TracFone must demonstrate that (1) it has a valid, protectable mark and (2) that defendants' use of the mark is "likely to cause confusion, or to cause mistake, or to deceive."

 Contributory infringement extends to "all those who knowingly play a significant role in accompanying the unlawful purpose." *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 500 (S.D.N.Y.1968). *See also Estee Lauder, Inc. v. Watsky*, 323 F.Supp. 1064, 1067 (S.D.N.Y.1970). "If a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). *See also Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 828 (5th Cir. 1998).

### A. Valid and Protectable Mark

Pursuant to section 7(b) of the Lanham Act, a certificate of registration of a trademark issued by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b). Moreover, the Eleventh Circuit strongly presumes registered marks to be valid. *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1562 (11th Cir.1991); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184–1185 (5th Cir.1980). If a registered trademark is incontestable, its validity, ownership, and exclusive right of use are conclusive and irrebuttable, subject only to a limited number of defenses. *See* 15 U.S.C. § 1115(b); *Soweco*, 617 F.2d at 1184–1185.

 In addition to the legal presumption afforded to registered trademarks, TracFone's Marks are also valid because they have acquired secondary meaning.[5] Indeed, TracFone's Marks are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality. (Amended Compl. ¶¶ 39, 41). As a result of the high quality of TracFone's products, services, sales, promotion and advertising, the Marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone. *Id.*

### B. Likelihood of Confusion

 The Eleventh Circuit considers seven factors to determine whether there is a likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and

---

5. The Eleventh Circuit has set forth a number of factors to be considered in determining whether a mark has acquired secondary meaning, including:

(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the [mark] and the plaintiff's product or business; and (4) the extent to which the public actually identifies the [mark] with the plaintiff's product or venture.

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir.1984).

customers; (5) similarity of advertising media used; (6) defendant's intent; and, (7) actual confusion. *See Dieter v. B & H Indus. of Sw. Fla., Inc.,* 880 F.2d 322, 326 (11th Cir.1989). Each of these factors demonstrates that Defendants' products are likely to cause confusion.

#### 1. Type of Mark

Courts determine the level of protection to be afforded a mark based upon the mark's strength: the stronger the mark, the greater the scope of protection. *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999). Marks can be grouped into one of four categories: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary." *Id.* Third party use of the Marks is another important factor in determining a mark's strength—"[t]he less that third parties use the mark, the stronger it is, and the more protection it deserves." *Frehling Enters., Inc.,* 192 F.3d at 1336. The final factor to consider in determining the strength of a mark is whether it is "incontestable"—the strength of the mark is enhanced if the United States Patent and Trademark Office has declared a mark "incontestable." *Id.*

TracFone's Marks—which are arbitrary marks—are due considerable protection based on the foregoing factors. An arbitrary mark, such as 'Sun Bank' when applied to banking services, is one that bears no relationship to the product and is the strongest types of mark. *Id.* at 1335–36. Just as the "Sun Bank" mark is arbitrary as applied to banking services, *see id.,* TracFone's Marks are arbitrary as applied to prepaid phone service and are entitled to substantial protection. *Id.* at 1335–36. Second, only TracFone and its affiliates use the Marks. *See Frehling Enters., Inc.,* 192 F.3d at 1336 (finding that no third-parties use the marks is another indication of the strength of the Marks). Finally, the TracFone trademark is "in-

contestable" and, therefore, entitled to another layer of protection.

#### 2. Similarity of the Marks

■ In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc.,* 192 F.3d at 1337. In this case, the Marks on the infringing phones are identical but the infringing Phones no longer conform to TracFone's specifications but still contain the actual TracFone Mark on the handset. Consumers only learn that the phone no longer operates as designed upon attempting to use the infringing phone for its intended purpose of accessing the TracFone prepaid wireless system. Defendants' infringing scheme thus causes confusion among consumers. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.,* 303 F.3d 1242, 1248 (11th Cir.2002).

#### 3. Similarity of the Products the Marks Represent

"The greater the similarity between the products and services, the greater the likelihood of confusion." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir.1985). Defendants' infringing phones appear virtually identical to unaltered TracFone Phones. (Talatham Decl., ¶ 9).

#### 4. Similarity of the Parties' Retail Outlets and Customers

"This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enters., Inc.,* 192 F.3d at 1339. Defendants' infringing phones are sold through internet retail outlets and appear to the customer as an authentic TracFone. (Garcia Decl., ¶ 29) Defendants are targeting the same consumers as TracFone—individuals looking for affordable, high quality wireless tele-

phones. (Garcia Decl., ¶ 29) *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir.1986) ("[l]ikelihood of confusion is more probable if the products are sold through the same channels to the same purchasers").

##### 5. *Similarity of Advertising Media*

"This factor looks to each party's method of advertising." *Id.* Although TracFone's advertising is much more extensive than Defendants', Defendants, just like TracFone, advertise on the internet. *See Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) (finding the greater the similarity between the advertising campaigns, products and services, the greater the likelihood of confusion).[6]

##### 6. *Defendants' Intent*

This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Frehling Enters., Inc.*, 192 F.3d at 1340. Likelihood of confusion can be demonstrated as a matter of law if this factor is present. *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir.1994); *Frehling Enters., Inc.*, 192 F.3d at 1340. Defendants' infringing scheme includes selling Phones with TracFone's Marks intact, which demonstrates that they seek to derive a benefit from TracFone's business reputation. Moreover, Defendants knowingly played a significant role in the bulk purchasing, unlocking, reflashing and reselling the Phones with the Marks intact.

##### 7. *Actual Confusion*

■ "The law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding of *likelihood* of confusion." *E. Remy Martin*, 756 F.2d at 1529; *Mont-*

gomery v. Noga, 168 F.3d 1282, 1302 (11th Cir.1999) ("[W]e have held that a plaintiff is not required to provide evidence of actual confusion in order to prove *likelihood* of confusion."). Adopting an identical mark "with the intent of deriving benefit from the reputation of [Plaintiff's mark] may alone be enough to justify the inference that there is confusing similarity." *AmBrit*, 812 F.2d at 1542; *see also Int'l Cosmetics Exch., Inc.*, 303 F.3d at 1248–49 (holding that concurrent use of same mark on similar product was sufficient to demonstrate a likelihood of confusion); *Babbit Electronics, Inc.*, 38 F.3d at 1179–80 (finding a likelihood of confusion despite a lack of evidence of actual confusion).

Based on the evidence presented, the parties sell virtually identical looking, directly competing products to the same purchasers through the same channels of trade utilizing the same advertising vehicles. Therefore, there is a strong likelihood of confusion as to the source of Defendants' products.

#### C. Resale of a Genuine Trademarked Product And the Material Difference Exception

■ Defendants' products are also infringing because they are materially different than TracFone's genuine Phones. The first sale doctrine does not apply when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner. *See Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir.2001); *Iberia Foods v. Romeo*, 150 F.3d 298, 302–3 (3d Cir.1998); *Enesco v. Price/Costco Inc.*, 146 F.3d 1083, 1087 (9th Cir.1998) (quoting *Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir.1996) (holding

---

**6.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

that a non-conforming product is not genuine and "its distribution constitutes trademark infringement")); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1302 (5th Cir. 1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 644 (1st Cir.1992); *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.,* 816 F.2d 68, 73 (2d Cir.1987). Indeed, materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. *See Iberia Foods,* 150 F.3d at 303; *Nestle,* 982 F.2d at 638.

■ A material difference is one that consumers consider relevant to a decision about whether to purchase a product. *See Martin's Herend Imports,* 112 F.3d at 1302; *Nestle,* 982 F.2d at 641. Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products. *See Iberia Foods,* 150 F.3d at 304; *Nestle,* 982 F.2d at 641. The resale of a trademarked product that has been altered, resulting in physical differences in the product, may constitute a material difference giving rise to a trademark infringement claim. *See Nestle,* 982 F.2d at 643–44 (applying the material difference exception, e.g., differences in the composition, presentation and shape of premium chocolates); *Original Appalachian Artworks,* 816 F.2d at 73 (applying the material difference exception where the infringing Cabbage Patch Kids dolls had Spanish language adoption papers and birth certificates, rather than English); *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1384–85 (9th Cir.1984) (finding willful infringement where the defendant sold genuine Sealy mattresses together with non-Sealy foundations); *Singer Mfg. Co. v. Briley,* 207 F.2d 519 (5th Cir.1953) (sale of reconditioned trademarked goods with no mention that the product was reconditioned consti-

tutes trademark infringement); *Joy Manu. Co. v. CGM Valve & Gauge Co., Inc.,* 730 F.Supp. 1387 (S.D.Tex.1989) (finding intentional infringement where the defendant used unauthorized nameplates bearing plaintiff's mark on valves that defendant refurbished to look like new, but failed to indicate them as used or reconditioned).

For example, reselling products with inferior warranties also constitutes a material difference. *See Perkins School for the Blind v. Maxi–Aids, Inc.,* 274 F.Supp.2d 319, 324 (E.D.N.Y.2003) (holding that plaintiff asserted a valid trademark infringement claim where defendant sold genuine Perkins Braillers products with an inferior warranty); *Movado Group, Inc. v. Matagorda Ventures, Inc.,* 2000 WL 1855120, *4 (S.D.N.Y.2000) (finding that the warranty can make the products sufficiently significantly different to constitute infringement). Several courts have held that the purchase and resale of goods solely within the United States may constitute infringement when differences exist in quality control or the products themselves. *See Enesco,* 146 F.3d at 1087; *Warner–Lambert,* 86 F.3d at 6; *Matrix Essentials v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 590–91 (5th Cir.1993); *Shell Oil Co. v. Commercial Petroleum Inc.,* 928 F.2d 104, 107 (4th Cir.1991).

■ Defendants resell and knowingly play is significant role in the resale of TracFone Phones that are materially different than those sold by TracFone. For instance, the warranty information is removed, which invalidates the warranty in its entirety. (Garcia Decl. at ¶ 27) Furthermore, the TracFone packaging is removed and the handsets are sold in packaging that is not approved by TracFone's quality controls. (Garcia Decl. at ¶ 28). *See Enesco,* 146 F.3d at 1087; *Warner–Lambert,* 86 F.3d at 6; *Matrix Essentials,*

988 F.2d at 590–91; *Shell Oil Co. v. Commercial Petroleum Inc.*, 928 F.2d 104, 107 (4th Cir.1991) (differences exist in quality control or the products themselves may result in infringement). Thus, under the material difference exception, Defendants' actions constitute trademark infringement.[7]

## II. *TracFone's Breach of Contract Claim (Count Three)*

■ To prevail on a cause of action for breach of contract, a party must show: (1) the existence of a valid and enforceable contract, (2) breach of the contract, and (3) damages. *See AIB Mortgage Co. v. Sweeney*, 687 So.2d 68, 69 (Fla. 3rd Dist.Ct. App.1997). Moreover, Florida law provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Fla. Stat. § 672.204(1) (adopting U.C.C. 2–204). This statute includes "shrinkwrap contracts" like the one at issue, where an agreement becomes effective as soon as a customer opens the product. *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F.Supp.2d 1354, 1364 (S.D.Fla.2009).

In "Florida and the federal circuits, shrinkwrap agreements are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.*, 2006 WL 449156 at *2 n. 5 (M.D.Fla. Feb. 22, 2006) (holding purchaser of software product was bound by terms of shrinkwrap agreement upon opening the packaging of the product, reasoning that a "vendor, as master of the offer, may invite acceptance by conduct and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance.") (quoting *ProCD, Inc. v. Zeiden-*

berg, 86 F.3d 1447, 1452 (7th Cir.1996)); *see also Microsoft Corp. v. Big Boy Dist. LLC*, 589 F.Supp.2d 1308, 1320 (S.D.Fla. 2008) (enforcing agreement against a downstream purchaser whose association with the manufacturer included indirect contacts through another party); *Siedle v. National Ass'n of Securities Dealers, Inc.* 248 F.Supp.2d 1140 (M.D.Fla.2002) (upholding the validity of a click-wrap agreement); *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So.2d 627 (Fla. 1st DCA 1999) (discussing the enforceability of a forum selection clause contained in a license agreement affixed to the outside of the software packaging where packaging displayed a sticker that provided "[by] opening this packet, you indicate your acceptance of the [plaintiffs] license agreement.").

■ The outside retail packaging of TracFone's Phones contain conspicuous language restricting the use of the Phones for TracFone Prepaid Wireless service and prohibits the consumer from tampering or altering the software or hardware in the phone. The language provides in part "[b]y purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service in the enclosed user guide." (Amended Complaint ¶ 44) Accordingly, an enforceable contract exists between the parties as to Defendants' use of the Phones and Defendants have breached the parties' contract by, *inter alia*, purchasing TracFone Prepaid Phones with the specific intent to reflash or unlock the phones and ship the phones outside of the United States. *Id.* ¶ 93. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this breach.

---

7. Because TracFone has elected to collect only statutory damages under the DMCA, the

Court will not discuss the damages TracFone has suffered as a result of this infringement.

## III. TracFone's Copyright and DMCA Claims (Counts Five, Six and Seven)

### A. TracFone's Copyright Claims

 To establish copyright infringement, TracFone must prove: 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1540 (11th Cir.1996). In the context of computer software, as is the case for TracFone, when the defendant has engaged in literal or verbatim copying of all of the protected source code, there is sufficient evidence to authorize a finding of infringement. *See Bateman*, 79 F.3d at 1544 n. 25. *See also Montgomery v. Noga*, 168 F.3d 1282, 1292 (11th Cir.1999) (upholding copyright claim based on copying over seventy percent of the source code from original version in which the claimant owned a registered copyright).

 TracFone owns United States Copyright Registration No. TX0006515894 for its computer program for cellular handset-resident prepaid system. (Amended Complaint ¶ 42) Pursuant to the copyright application, the software was created in 2002 and first used in commerce on January 1, 2003. *Id.* at Exhibit C. The application for registration was filed with the Library of Congress on September 15, 2006. *Id.* A certificate of copyright registrations creates a rebuttable presumption that the copyright is valid. *See Montgomery*, 168 F.3d at 1292; 17 U.S.C. § 410(c)

("the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."). Thus, TracFone has a valid copyright registration.

Defendants' and/or its co-conspirators' actions in reflashing or otherwise modifying the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized reproduction and derivate work of the TracFone Prepaid Software. (Amended Complaint ¶¶ 101–102) Accordingly, TracFone's copyright has been infringed. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this infringement.

### B. DMCA Violations

17 U.S.C. § 1201(a)(1) states that:

No person shall circumvent a technological measure [8] that effectively controls access to a work [9] protected under this title.

17 U.S.C. § 1201(a)(2) states that:

No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively

---

8. "[T]o 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

9. "[A] technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title [17 U.S.C.A. S 1 et seq.]; or,

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

■ The TracFone Prepaid Software contains technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with TracFone's authority, to gain access to the proprietary software. (Amended Complaint ¶ 105). TracFone did not give Defendants or their co-conspirators authority to reflash, unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the TracFone Prepaid Software. *Id.* ¶ 107. Moreover, Defendants acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair TracFone's technological measure for effectively controlling access to the proprietary software without TracFone's authority. *Id.* ¶ 109. Defendants engaged in this conduct for the purpose of reselling the altered devices for a profit, and not for the sole purpose of lawfully connecting to a wireless telephone communication network, *Id.* ¶ 110.

Further, Defendants' and/or their co-conspirators are in possession of certain instrumentalities that avoid, bypass, remove, disable, deactivate, or otherwise impair the technological measures within the TracFone Prepaid Software that effectively control access to the proprietary TracFone Prepaid Software. *Id.* ¶ 113. Accordingly, Defendants are, or are knowingly facilitating co-conspirators who are, trafficking in the service of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software by offering to the public its alteration service for a fee. Based on the foregoing, Defendants have violated the DMCA and TracFone is entitled to recover statutory damages for Defendants' violation.

Pursuant to 17 U.S.C. 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone Prepaid Phone Defendants altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme. *See Stockwire Research Group, Inc. v. Lebed,* 577 F.Supp.2d 1262, 1268 (S.D.Fla.2008) (awarding statutory damages per act of circumvention in the total amount of $2,357,200.00); *see also Microsoft Corp. v. Silver Star Micro, Inc.,* No. 1:06–cv–1350–WSD, 2008 WL 115006 at *9 (N.D.Ga. Jan. 9, 2008) (awarding the statutory maximum for each of defendant's acts of circumvention); *Sony Computer Entm't Am., Inc. v. Divineo, Inc.,* 457 F.Supp.2d 957, 967–68 (N.D.Cal.2006) (awarding statutory damages in amount of $5,791,400.00 under the DMCA in a default judgment against defendant); *Sony Computer Entm't Am., Inc. v. Filipiak,* 406 F.Supp.2d 1068 (N.D.Cal.2005) (entering final judgment against defendant for $6,018,700.00 in statutory damages under the DMCA based on defendant's sale of 7194 infringing items); *Coxcom, Inc. v. Chaffee,* 2007 WL 1577708 (D.R.I. May 31, 2007) ("Courts have interpreted this provision [17 U.S.C. 1203(c)(3)(A)] to authorize an award of statutory damages *'for each device sold'*") (emphasis added) (quoting *Filipiak,* 406 F.Supp.2d at 1074).

Business records and declarations produced by TracFone demonstrate that Defendants sold and trafficked *at minimum* 4,990 TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme. *See,* Motion at Ex. A. Defendants' sale of these Phones has caused damage and substantial and irreparable harm to TracFone. (Amended Complaint, ¶¶ 72–78) Furthermore, Defendants' actions were willful and necessitate an award at the maximum statutory amount. *See Filipiak,* 406 F.Supp.2d at 1075 (awarding the maximum statutory award per circumvention based, in part, on defendant's willful violations of the DMCA). Accordingly, TracFone is awarded statutory damages against Defendants in the maximum amount of $12,375,000, for Defendants' violations of the DMCA. 17 U.S.C. 1203(c)(3)(A); *see also Divineo, Inc.,* 457 F.Supp.2d 957; *Filipiak,* 406 F.Supp.2d 1068; *Chaffee,* 2007 WL 1577708.

### IV. *TracFone's Tortious Interference Claim (Count Eight)*

■ To prevail on a claim of tortious interference, TracFone must show: "(1) the existence of a business relationship or an enforceable contract, (2) knowledge of the relationship on the part of the defendant, (3) an intentional and unjustified interference with the relationship by the defendant, and (4) damage to the plaintiff as a result of the breach of the relationship." *Carl v. Republic Security Bank,* 282 F.Supp.2d 1358, 1371–1372 (S.D.Fla.2003); *see also Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126, 1127 (Fla.1985) (elements of tortious interference with a business relationship); *Wackenhut Corp. v. Maimone,* 389 So.2d 656, 657 (Fla. 4th Dist.Ct.App.1980) (elements of tortious interference with a contractual relationship).

TracFone has properly established the existence of an enforceable contract. (Amended Complaint ¶ 91) Defendants knew about the contractual relationship and, despite their knowledge, they intentionally and unjustifiably interfered with the relationship. *Id.* ¶ 125. Defendants' actions caused TracFone to suffer damages. *Id.* ¶ 127. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this tortious interference.

### V. *TracFone's Conspiracy Claims (Counts Nine and Ten)*

■ To properly state a claim for civil conspiracy, a plaintiff must allege "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Florida Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam Cty.,* 616 So.2d 562, 565 (Fla. 5th DCA 1993).

■ The evidence shows that Defendants worked in concert with other individuals who were engaged in the unlawful bulk purchasing, reflashing, and sale of the altered TracFone Phones. (Amended Complaint ¶¶ 65–71; 124–125; 128–129) In furtherance of this conspiracy, Defendants purchased TracFone Prepaid Phones from non-parties to this suit. *Id.* ¶¶ 65; 128. Furthermore, as a result of the conspiracy, TracFone has suffered damages in the form of lost sales, lost profits, loss of ability to control the quality of its product, inability to supply retailers with sufficient volume of Phones, and loss of business reputation and goodwill. *Id.* ¶¶ 72–78. Accordingly, Defendants have actively participated in a conspiracy to induce breach of contract and a conspiracy in violation of Florida common law. *Florida Fern Growers Assoc.,* 616 So.2d at 565. Because TracFone has elected to collect only statutory damages under the DMCA, the Court

will not discuss the damages TracFone has suffered as a result of this unlawful conspiracy.

### VI. *TracFone's Unjust Enrichment Claim (Count Eleven)*

■ To prevail on a cause of action for unjust enrichment, a plaintiff must show that: 1) a benefit was conferred on the defendant, 2) the defendant had knowledge of the benefit conferred, 3) the defendant accepted and retained the benefit, and 4) it would be inequitable for the defendant to retain the benefit without compensation to the plaintiff. *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So.2d 672, 675 (Fla. 3rd Dist.Ct.App.2000); *see also Nova Information Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006–07 (11th Cir.2004). Courts have held that a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract exists. *Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312–13 (S.D.Fla.2008) (claim for unjust enrichment may proceed where plaintiff has not asserted a claim based on an express contract). Because I have previously found Defendants liable for breach of contract, this claim only applies to the Phones Defendants purchased and sold that are not subject to the "shrinkwrap" agreements that form the basis of TracFone's breach of contract claim.

■ By bulk purchasing the TracFone Prepaid Phones from bulk resellers below the manufacturers' cost of the phones, Defendants obtained benefits from TracFone that have resulted in significant financial benefits to Defendants through their resale of the bulk purchased TracFone Prepaid Phones. (Amended Complaint ¶ 131) Defendants acquired the benefits voluntarily and with full knowledge. *Id.* ¶ 132. Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying TracFone the

value of the benefits Defendants' acquired. *Id.* ¶ 133. Therefore, Defendants have been unjustly enriched by their actions. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this unjust enrichment.

### *CONCLUSION*

Accordingly, it is hereby,

**ORDERED, ADJUDGED** and **DE-CREED** that:

1. Final judgment is hereby entered against Defendants, Anadisk, DNMA66, Kilinc and in favor of the Plaintiff, TracFone, on all of the claims set forth in TracFone's Amended Complaint.

2. Pursuant to 17 U.S.C. 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone Prepaid Phone Defendants altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme. The Court finds that Defendants altered, or sold as part of a conspiracy to alter, at minimum, 4,990 TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme in violation of the DMCA. Final Judgment is hereby entered against Defendants, jointly and severally, and in favor of the Plaintiff, in the principal amount of **$12,375,000** which shall bear interest at the legal rate, and for which let execution issue forthwith.

3. Defendants Anadisk, DNMA66, and Kilinc are hereby PERMANENTLY ENJOINED from:

 a. purchasing and/or selling any wireless mobile handset that they know, or should know, bears, or at one time bore, any TracFone/NET10/Straight Talk/SafeLink Trademark, any other trademark owned or used by TracFone, or any

other model of wireless mobile phone sold or marketed by TracFone ("TracFone Handsets"). Specifically, the Defendants are enjoined from purchasing and/or selling all models of wireless phones currently offered for sale by TracFone, or that may be offered for sale in the future, as listed and updated from time to time on TracFone's, NET10's and SafeLink's websites, *www.tracfone.com, www.net10.com, www.straighttalk.om* and *www.safelink.com,* respectively, and including without limitation the following TracFone/NET10 handsets:

| Kyocera K126C | Motorola C139 | Nokia 1100 |
| LG 100C | Motorola C155 | Nokia 1112 |
| LG 220C | Motorola C261 | Nokia 1600 |
| LG 290C | Motorola C343 | Nokia 2126 |
| LG 1500 | Motorola EM326g | Nokia 2126i |
| LG 200C | Motorola RAZR V3a | Nokia 2285 |
| LG 200CM | Motorola V170 | Nokia 2600 |
| LG 300G | Motorola V171 | Nokia 3390 |
| LG 3280 | Motorola V176 | Samsung R451C |
| LG 400G | Motorola W175g | Samsung T101G |
| LG 410G | Motorola W260g | Samsung T201G |
| LG 600G | Motorola W370g | Samsung T301G |
| LG CG225 | Motorola W375 | Samsung T401G |
| | Motorola W376g | |
| | Motorola W377g | |

b. rekitting, reflashing and/or unlocking of any TracFone Handset;

c. accessing, altering, erasing, tampering with, deleting or otherwise disabling TracFone's proprietary prepaid cellular software contained within any model of TracFone Handsets;

d. facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in rekitting, reflashing and/or unlocking TracFone Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in TracFone Handsets;

e. facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction including, without limitation, the buying and/or selling of unlocked TracFone Handsets; and,

f. knowingly using the TracFone/NET10/Straight Talk/SafeLink Trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with TracFone/NET10/Straight Talk/SafeLink Trademarks, without TracFone's prior written authorization.

3. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction or the parties' settlement.

4. If any Defendant to this action violates the terms of this Permanent Injunction TracFone shall be entitled to file an Affidavit or Declaration of Violation requesting that the Court order the payment of compensatory damages to TracFone in the amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each Phone purchased, sold, unlocked, reflashed, altered, rekitted, advertised, solicited and/or shipped in violation of the Permanent Injunction, or a single damages award of One Million Dollars and No Cents ($1,000,000.00 (U.S.)), whichever is greater. TracFone shall provide at least five (5) working days notice to Defendants after filing an Affidavit or Declaration of Violation. The Court finds that any amounts awarded under this paragraph are compensatory and reasonable estimations of the minimum damages suffered by TracFone for such a breach and will serve

to compensate TracFone for its losses in the event a Defendant violates the terms of this Permanent Injunction.

12. The last known address of Defendant, Davut Kilinc is 7720 St. Lawrence Avenue, Pittsburgh, Pennsylvania.

13. The last known address of Defendant, Anadisk LLC is 7720 St. Lawrence Avenue, Pittsburgh, Pennsylvania.

14. The last known address of Defendant, DNMA66 LLC is 7720 St. Lawrence Avenue, Pittsburgh, Pennsylvania.

15. The address of Plaintiff, TracFone Wireless, Inc. is 9700 Northwest 112th Avenue, Miami, Florida 33178.